Joyce McCORMICK, Appellant,

v.

STOWE LUMBER COMPANY, Appellee.

No. 10938.

Court of Civil Appeals of Texas.

Austin.

April 11, 1962.

Rehearing Denied May 2, 1962.

Taylor & Taylor, Temple, Byrd, Davis & Eisenberg, Austin, for appellant.

Brown, Sparks & Erwin, Austin, for appellee.

RICHARDS, Justice.

This is a summary judgment case. Suit was originally brought by Joyce McCormick, appellant, against Stowe Lumber Company, appellee, to recover damages for personal injuries sustained by appellant while riding in an automobile driven by Lou Anne Keller which collided with the rear-end of a truck owned by Stowe Lumber Company. In her first original petition appellant joined Lou Anne Keller as a party defendant, alleging that on June 13, 1959 at the intersection of Highway 81 and Farm Road 346 in Belton, Texas the car driven by Lou Anne Keller, in which appellant was riding as a passenger, was struck by a truck owned by Stowe Lumber Company and operated by its employee, and as a result of the collision appellant was injured; that the injuries suffered by appellant were "directly and proximately" caused by the negligence of Lou Anne Keller and also by the negligence of the driver of appellee's truck, each being guilty of many acts of negligence which jointly and severally proximately caused the injuries suffered by appellant.

Appellee Stowe Lumber Company moved for summary judgment against appellant upon the ground that the pleadings together with depositions of Lou Anne Keller and appellant showed as a matter of law that defendant Lou Anne Keller was negligent at the time of the collision, which negligence was a proximate cause of the collision and the injuries sustained by appellant; that at the time of the collision appellant and Lou Anne Keller were engaged in a joint enterprise and that the negligence on the part of Lou Anne Keller was imputed to appellant. Appellant filed her reply to the motion for summary judgment denying that appellee was entitled to summary judgment and in the alternative in the event appellee was granted a summary judgment, appellant asked for summary judgment in her favor against Lou Anne Keller, which reply was supported by appellant's affidavit which in substance denied that appellant had any control over Lou Anne Keller who was the driver of the automobile at the time of the collision. Lou Anne Keller answered by special exceptions, general denial and specially denied that she was guilty of any negligence proximately causing the collision.

On February 17, 1961 the Trial Court heard appellee's motion for judgment and considered the pleadings then on file, the depositions of appellant, Lou Anne Keller and William T. Headrick, a police officer for the City of Belton who had investigated the collision which occurred within the city limits of the City of Belton, and the hearing having concluded on the same day, took the motion under advisement.

On March 23, 1961 the Trial Court granted appellee's motion for summary judgment that appellant take nothing against it, from which adverse judgment this appeal was perfected. On March 31, 1961 the Trial Court heard appellant's motion for summary judgment against Lou Anne Keller and finding that there were disputed issues of material fact, denied the motion. At appellant's request, the Court then severed her cause of action against Lou Anne Keller from her cause of action against appellee.

For her first point of error appellant asserts that the Trial Court erred in holding as a matter of law that appellant and Lou Anne Keller were on a joint enterprise at the time of the collision.

Appellant Joyce McCormick and Lou Anne Keller were longtime friends having grown up together in Seguin. About May 1, 1959 Lou Anne moved to Joyce's apart-

ment in Austin as her roommate and since Joyce did not have a car they used Lou Anne's 1956 Studebaker. When they were together usually Lou Anne drove although Joyce sometimes drove the car in Austin. Several weeks before the collision Joyce and Lou Anne decided they wanted to go to Gatesville, Texas to attend a rodeo to be held on the day of the collision.

Lou Anne's car was not operating properly so several days before the collision Lou Anne and Joyce took the car to Seguin to be repaired, and while in Seguin they borrowed a car belonging to Joyce's mother and father, Mr. and Mrs. Kunkel, and returned to Austin. Shortly after noon on June 13, 1959 Joyce and Lou Anne started from Austin to Gatesville in the Kunkel car with Lou Anne driving. At some point between Round Rock and Georgetown Joyce went to sleep and was still asleep at the time of the accident so that she was entirely ignorant as to how or why the accident occurred.

The collision occurred within the city limits of Belton, Texas at the intersection of U. S. Highway 81 and Farm Road 436 at about 5:30 P.M., at which time it was broad daylight, the visibility was clear and the roadway was dry. At the place where the collision occurred U. S. Highway 81 is a divided highway with one 2-lane paved roadway for southbound traffic and one 2-lane paved roadway for northbound traffic, which are separated from each other by about 10 feet of unpaved area. At or near its intersection with Farm Road 436, the northbound roadway of U. S. Highway 81 runs generally north and south and Farm Road 436 runs generally east and west, the northbound roadway curving gently to the right but not enough to interfere with the forward vision of persons driving thereon. Farm Road 436 is a paved 2-lane highway and intersects at right angles with and forms a deadend at the northbound roadway of U. S. Highway 81, the latter having a broad stripe dividing the highway into two traffic lanes. For a distance of about 20 feet immediately south of the intersec-

tion the paved portion of the northbound roadway widens on the east side to make a narrow third lane for the use of drivers turning to their right off of the northbound roadway to Farm Road 436.

Immediately prior to the collision an empty trailerrig owned by appellee was travelling the northbound roadway of U. S. Highway 81 and approaching its intersection with Farm Road 436. The Kunkel car was following the truck in the same lane on the northbound roadway of U. S. Highway 81. The collision occurred when the right front of the Kunkel car struck the left rear of the trailer.

In granting appellee's motion for summary judgment, the Trial Court held that as a matter of law, appellant and Lou Anne Keller were engaged in a joint enterprise at the time and on the occasion of the collision of the Kunkel car with appellee's truck. If appellant and Lou Anne Keller were engaged in a joint enterprise then as a matter of law if Lou Anne Keller was guilty of negligence, such negligence is legally imputed to appellant. El Paso Electric Co. v. Leeper, Tex.Com.App., 60 S.W.2d 187.

In summary judgment proceedings under Rule 166–A, Texas Rules of Civil Procedure, the burden rests upon the movant to successfully negate the existence of genuine issues of material fact and all doubts as to the existence thereof must be resolved against the movant. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929, 931.

Appellant asserts that the holding of the Trial Court that appellant and Lou Anne Keller were engaged in a joint enterprise was based upon the decision of the Commission of Appeals in El Paso Electric Co. v. Leeper, supra, but contends that in that case there was no evidence of a course of conduct whereby one party drove exclusively while in the instant case there was evidence that Lou Anne Keller drove exclusively upon the highway not only as a matter of

custom and practice but in reliance upon an express understanding which would raise an issue of material fact precluding the granting of the summary judgment. In view of appellant's contention it is necessary to compare the factual situation disclosed in the opinion in the Leeper case with the uncontradicted factual situation presented to the Trial Court in the summary judgment proceedings.

■ As announced in the Leeper case, the rule of law governing the question of joint enterprise is that:

"Where persons are engaged in a common or joint enterprise and each has an equal right to direct and control the conduct of the others with respect to acts or omissions which contributed to cause an injury to one of them, the negligence of one of such persons is imputed to each of the others.

" * * * Occupants of a conveyance are supposed to be on a joint expedition where they have not only a joint interest in the object and purpose of the enterprise, but also an equal right, express or implied, to direct and control the conduct of each other in the operation of the conveyance."

The opinion in the Leeper case has been cited and expressly approved in Nelson v. Fulkerson, 155 Tex. 298, 286 S.W.2d 129, 132; Straffus v. Barclay, 147 Tex. 600, 219 S.W.2d 65, 68; Rankin v. Nash-Texas Co., 129 Tex. 396, 105 S.W.2d 195, 199; Ford Motor Co. v. Maddin, 124 Tex. 131, 76 S.W. 2d 474, 476. Therefore if a driver and a passenger have a common purpose and object in making an automobile trip and if the passenger has an equal *right*, either express or implied, to direct and control the conduct of the driver in the operation of the vehicle, there is a joint enterprise and the negligence of the driver will be imputed to the passenger.

■ Since the *right* to control the conduct of the driver and not the *actual* control

of the driver's conduct constitutes the legal test, the question to be decided is: Did appellant have an equal right to control the conduct of the driver, Lou Anne Keller who was driving and operating the Kunkel automobile at the time of the collision?

In the Leeper case Miss Leeper sued El Paso Electric Company for damages for personal injuries alleged to have been received by her as a result of the negligence of the Electric Company. The evidence showed that while the car in which Miss Leeper was riding and being driven by Lt. Nutter was rounding a curve on a wet paved road, it left the pavement and struck one of the transmission line poles belonging to the Electric Company and as a result of which Miss Leeper was badly injured. The accident occurred at night.

The jury found the Electric Company guilty of negligence in maintaining its transmission line pole where it was located and also found that Lt. Nutter who was driving the car at the time of the accident was negligent, which negligence was a proximate cause of the accident.

The evidence showed that the car belonged to Miss Leeper's mother; that Lt. Nutter drove to Miss Leeper's home in his own car but since another couple wished to go to a dance with Lt. Nutter and Miss Leeper, Lt. Nutter's car could not be used because it had only one seat. Miss Leeper then asked her mother for the use of her mother's car, which request was granted. Lt. Nutter was not expressly requested to drive but he did drive because he always drove Miss Leeper's mother's car when he and Miss Leeper used that car. Miss Leeper testified that she did not know that Lt. Nutter was requested to drive since he always drove by a sort of common consent and whenever she was with him in that car (her mother's) she always let him drive. Mrs. Leeper knew that Lt. Nutter was going to drive her car and acquiesced in that arrangement because she rode part of the way to the dance with Lt. Nutter and Miss Leep-

er and during that portion of the trip Lt. Nutter was driving.

Miss Leeper's mother testified that she had loaned her car to her daughter and Lt. Nutter on many previous occasions whenever Miss Leeper requested it and that on the occasion of the collision she turned the car over to Lt. Nutter. Miss Leeper testified that she had nothing to do with the driving of the car and that she did not know the way they were going to take to go to the dance since that was left to Lt. Nutter and that she never did say anything to him or anything of that sort because she was always perfectly at ease.

Based upon the testimony, the Commission of Appeals held that as a matter of law Miss Leeper and Lt. Nutter were engaged in a joint enterprise.

In the case at bar the testimony of appellant's right to control Lou Anne Keller's operation of the car at the time and on the occasion of the collision is strikingly similar to the testimony in the Leeper case. Appellant testified that from the time she separated from her husband until her divorce was granted she frequently travelled from place to place in Miss Keller's car and sometimes drove it. The car which was driven at the time of the collision belonged to her mother but was in her father's name and that on previous occasions when appellant and Lou Anne had gone to their respective homes in Seguin they had used the car belonging to appellant's parents, which sometimes was driven by appellant and sometimes by Lou Anne but Lou Anne did most of the driving on the highway.

About three days before the collision appellant and Lou Anne took Lou Anne's car to Seguin so that it could be repaired at which time appellant asked her mother to lend her car to appellant and Lou Anne because Lou Anne's car was being repaired and that they had no way to "get around." Appellant's mother agreed to lend her car knowing that appellant and Lou Anne planned to drive it to Gatesville to the rodeo.

Both appellant and Lou Anne wanted to go to the rodeo at Gatesville to meet some mutual friends.

On the trip to Gatesville, it was taken for granted that Lou Anne would drive because she always drove on the highway and appellant went to sleep during the trip and was asleep at the time of the collision.

Lou Anne Keller testified that she and appellant used Lou Anne's car whenever either one wanted to use it and that either one could and did drive it; that she and appellant were going to the rodeo at Gatesville because both of them wanted to go and that when she took her car to Seguin for repair, appellant's mother offered to let appellant and Lou Anne use appellant's mother's car which was driven by both Lou Anne and appellant in Austin.

The factual situations in the Leeper case and the instant case are practically parallel. In both cases plaintiff's mother loaned her car to the plaintiff and her companion. In both cases plaintiff's mother knew and acquiesced in the companion driving the car. In both cases the companion was driving the car at the time of the collision by common consent because in each case the companion always drove under similar circumstances. In both cases the plaintiff was exercising no *actual control* over the operation of the cars by the companion at the time of the collision. In both cases even though the plaintiff had relinquished all *actual control* of the car to the companion, there was no question that the plaintiff at all times retained the right to control the companion's operation of the car.

In addition, on the question of the *right to control,* appellant testified that appellant had been driving Lou Anne's car prior to the date of the collision and if Lou Anne had told her to drive more slowly or to turn the operation of the car over to Lou Anne, she would have done so and that on the trip during the course of which the collision occurred, had she given Lou Anne any instructions as to the manner in which Lou Anne

was to drive appellant's mother's car or had told her to turn the operation of the car over to appellant, Lou Anne would have obeyed because the car belonged to appellant's mother.

Lou Anne Keller testified that she would have obeyed any instructions that appellant might have given her regarding the operation of appellant's mother's car and if appellant had told her to turn the operation of the car over to her, she would have done so because the car belonged to appellant's mother.

It is clear from the testimony of both appellant and Lou Anne Keller that the evidence on the right to control the companion's operation of the car is much stronger than the evidence on the right to control stated in the opinion in the Leeper case.

Appellant cites several cases in support of his contention, the first of which is Ener v. Gandy, 138 Tex. 295, 158 S.W.2d 989. Here the Supreme Court held that the evidence did not raise the issue of joint enterprise between the son and the mother who was a passenger in the automobile driven by the son and since the "family purpose" doctrine has been rejected in this State, the only issue upon which the plaintiff could recover would be upon the relationship of principal and agent or master and servant, holding that the mother was only a passenger in the automobile as the guest of her son. Schuhmacher Co. v. Holcomb, 142 Tex. 332, 177 S.W.2d 951, 953, also involved the "guest" doctrine. Therefore, neither of these cases is in point.

In Buss v. Robison, Tex.Civ.App., 255 S.W.2d 339, error ref., N.R.E., the jury found that the plaintiff and the driver of the automobile were not engaged in a joint enterprise at the time and place of the collision and therefore the negligence of the driver could not be imputed to his companion. The Court held that this finding was based upon the uncontradicted evidence that at the time of the collision the

driver and his companion were headed for two separate places some miles apart under the instructions of their employer to engage in two separate jobs neither of which was related to the other and therefore as a matter of law the evidence failed to show the existence of all the elements of joint enterprise. Here the evidence plainly shows that the journey to Gatesville was undertaken jointly by appellant and Lou Anne Keller for the purpose of attending a rodeo and therefore the cited cases are not applicable.

The last case cited by appellant is a quotation from Stafford v. Roadway Transit Co. (U.S.C.A. 3) 165 F.2d 920, which seemingly supports appellant's contention. However, it is the rule in Pennsylvania where the case was tried that the negligence of a driver of a vehicle can be imputed to a passenger therein only when the evidence justifies a finding of the passenger's right to share in the control of the vehicle at the time of the negligence which is the test of such imputability whether the driver and passenger were engaged at the time in a joint enterprise or not. The rule is applicable even though the passenger is the owner of the vehicle if the driver, although operating the vehicle with his permission, is not acting as his agent or servant. In the cited case the passenger was the owner of the vehicle but the driver, although operating it with his permission, was not acting as his agent or servant and therefore under the Texas law the owner was a guest to whom no negligence could be imputed.

None of the cases cited sustain appellant's contention when applied to the factual situation before us. Applying the rule of law governing joint enterprise in the operation of a motor vehicle and comparing the factual situations developed in the Leeper case and the case at bar, it is our opinion that the Trial Court was correct in holding as a matter of law that appellant and Lou Anne Keller were engaged in a joint enterprise at the time and on the occasion of the collision and there-

fore any negligence on the part of Lou Anne Keller is imputed to appellant as a matter of law. Appellant's first point of error is overruled.

■ Appellant assigns as her second point of error that the Trial Court erred in holding as a matter of law that Lou Anne Keller was guilty of negligence which proximately caused the collision.

The motion for summary judgment was heard by the Court on March 17, 1961 but judgment was not entered until March 23, 1961. The judgment contains the following recitations:

> "Thereupon the Court heard the aforesaid motion, the pleadings, depositions, and other documents introduced into evidence in connection with said motion, and the arguments of counsel. The hearing was concluded on March 17, 1961, and the Court announced that the said motion would be taken under advisement."

Among the pleadings, depositions and other documents which were considered by the Trial Court on March 17, 1961 were appellant's first amended petition and the depositions of appellant, Lou Anne Keller and William T. Headrick, a police officer for the City of Belton. Lou Anne Keller's deposition as an adverse witness was offered by appellee but Mr. Headrick was appellant's witness.

Officer Headrick testified that as a police officer for the City of Belton he investigated the collision, which occurred within the city limits of Belton, immediately after its occurrence and within an hour and a half thereafter he interviewed Lou Anne Keller at the hospital in Belton to which she had been taken following the accident; that during their conversation Lou Anne Keller stated that she had been driving about 65 miles an hour in a 50 mile zone when she started to pull around the truck but that she was "just too close to get around him." In her deposition Lou Anne admitted making the statement to officer Headrick.

■ Her admission that she was driving about 65 miles an hour in a 50 mile zone when she started to pull around the truck and that she was "just too close to get around him" was an admission that she was operating the automobile at an excessive rate of speed in violation of Art. 827a, § 8, Vernon's Ann.Penal Code, and was following appellee's truck too closely in violation of Sec. 61(a), Art. 6701d, Vernon's Ann.Civil Statutes, both of which are penal statutes, the violation of which constituted not merely evidence of negligence but negligence *per se*. Mundy v. Pirie-Slaughter Motor Co., 146 Tex. 314, 206 S.W.2d 587, 590.

■ There was offered in evidence and considered by the Trial Court appellant's first amended petition which contained the following allegations:

> "Since Joyce McCormick was seriously, painfully and permanently injured by the negligence of Lou Anne Keller and also by the negligence of Sammie Ray Reid for whose negligence Stowe Lumber Co. is legally responsible, this suit is brought against such defendants for $50,000.00 damages."

> "6. The injuries and damages suffered by plaintiff were directly and proximately caused by the negligence of Lou Anne Keller, and also by the negligence of Sammie Ray Reid for whose negligence defendant Stowe Lumber Co. is legally responsible. At the time and place in question they were guilty of many acts of negligence, each of which jointly and severally proximately caused the serious painful and permanent injuries and damages suffered by plaintiff."

The foregoing allegations constituted judicial admissions which are conclusive against appellant. Rose v. Baker, 138 Tex. 554, 160 S.W.2d 515, 516; 24 Tex.Jur.2d Sec. 631; 33 Tex.Jur. Sec. 191. Appellant thus admitted that the injuries and dam-

ages suffered by her were directly and proximately caused by the negligence of Lou Anne Keller.

The admissions of negligence by Lou Anne Keller to officer Headrick, coupled with the judicial admission contained in appellant's pleading, constituted sufficient evidence for the Trial Court to find as a matter of law that Lou Anne Keller was guilty of negligence which was the proximate cause of the collision and since appellant and Lou Anne Keller were engaged upon a joint enterprise, the negligence of Lou Anne Keller is imputed to appellant as a matter of law.

■ But appellant contends that the Court could not consider the allegations of negligence in her first amended original petition quoted supra for the reason that by filing her second amended original petition on March 20, 1961, while the Trial Court had the motion for summary judgment under advisement, the first amended original petition constituted an "abandoned" pleading and as a result could not constitute a "judicial" admission.

It is the rule of law that pleadings in a particular case for the purpose of use as such are to be regarded as judicial admissions but it is also the rule that when a pleading has been abandoned, superseded, or amended, it ceases to be a "judicial" admission. Kirk v. Head, 137 Tex. 44, 152 S.W.2d 726, 729. The only material difference between the allegations contained in the appellant's second amended original petition from those in her first amended original petition consists in the elimination of the allegations of negligence in the first paragraph quoted supra and the substitution of the following paragraph 6 in lieu of paragraph 6 quoted supra.

"6. The injuries and damages suffered by Joyce McCormick Edmondson were directly and proximately caused by the negligence of Sammie Ray Reid for whose negligence defendant Stowe Lumber Company is

legally responsible. In the alternative, plaintiffs allege that such injuries and damages were directly and proximately caused by the negligence of Lou Anne Keller, or both. At the time and place in question, *one or the other or both were guilty of many acts of negligence, each of which jointly and severally proximately caused* the serious, painful and permanent injuries and damages suffered by plaintiff, Joyce McCormick Edmondson." (Italics supplied.)

In other words, instead of alleging joint negligence on the part of appellee's driver and Lou Anne Keller, as in the first amended petition, appellant alleged the negligence of Lou Anne Keller in the alternative and then alleged joint and several acts of negligence on the part of each defendant. It does not appear from the record that appellant's second amended original petition was filed under Rule 63, T.R. C.P., but if so, no leave of Court was requested or obtained for its filing as required by that rule. If the second amended original petition was filed as a trial amendment under Rule 65, it does not appear from the record that leave of Court was first requested or obtained as required therein.

However, it is apparent from the record that the Trial Court did not and could not consider the allegations in appellant's second amended original petition since in summary judgment proceedings the Trial Court in hearing the motion could only decide from the record which was *then* before him whether or not any genuine issue of material fact was presented and whether or not as a matter of law the movant was entitled to judgment. Haley v. Nickels, Tex.Civ.App., 235 S.W.2d 683, 685, no writ history; Oaxaca v. Lowman, Tex.Civ.App., 297 S.W.2d 729, 732, error ref., N.R.E.; Green v. Smart, Tex.Civ.App., 333 S.W.2d 880, 885, no writ history; Hurley v. Knox, Tex.Civ.App., 244 S.W.2d 557, 559, error ref., N.R.E.

Treating appellant's first amended original petition as an "abandoned" pleading, which it is not, even then the quoted allegations contained therein are properly admissible in evidence as admissions although not conclusively binding upon the appellant since they no longer constitute "judicial" admissions. Kirk v. Head, supra. Such pleading was therefore admissible in evidence as an "admission" under the provisions of Rule 166–A, T.R.C.P.

In Lesikar v. Lesikar, Tex.Civ.App., 251 S.W.2d 555, 558, error ref., N.R.E., which was a summary judgment proceeding, an "abandoned" pleading was offered in evidence at the hearing upon the motion. After stating the rule concerning judicial admissions and admissions in abandoned pleadings set forth in Kirk v. Head, supra, the Court held:

> "The abandoned pleadings, when introduced upon the hearing on said motion, had the same legal effect as if appellant had personally admitted upon the hearing the matter set forth in said admissions. It is true that he was entitled to deny or explain the admissions contained in said abandoned pleadings. But he did nothing whatever to deny the truth of said admissions, by affidavit or otherwise. We do not understand that appellant contends that his new pleadings, which superseded his abandoned pleadings, could be taken as evidence to support themselves. The effect of said admissions in said abandoned pleadings was to make out a prima facie case that the deeds constituted a fraudulent conveyance of the lands involved. * * * Consequently, it seems inescapable that in the state of the record the court had no alternative but to conclude as a matter of law upon the hearing on the motion for summary judgment that the conveyances were fraudulent."

Therefore conceding *arguendo* that the admissions contained in appellant's first amended original petition was in an "abandoned" pleading, under the holding in Lesikar v. Lesikar, the Trial Court had no alternative but to conclude as a matter of law upon the hearing on the motion for summary judgment that Lou Anne Keller was guilty of negligence which proximately caused the collision since appellant did not deny the truth of such admissions by affidavit or otherwise.

Appellant cites Womack v. Allstate Insurance Co., 156 Tex. 467, 296 S.W.2d 233, and Hammett v. Fleming, Tex.Civ.App., 324 S.W.2d 70, error ref., N.R.E., in support of her contention that in summary judgment cases while the Trial Court will normally look to the pleadings to determine the issues in the case, yet when the depositions, admissions or affidavits disclose facts which show that an amendment to the pleadings of the opposite party will render the position of the movant insupportable under the substantive law, it cannot be said that the movant has established his right to judgment as a matter of law and therefore summary judgment should be denied regardless of defects which may exist in the pleadings.

The question as to admissibility of admissions, judicial or otherwise, in pleadings of the opposite party presented here was not before the Court in either of these cases. In the instant case the depositions and affidavits considered by the Court did not disclose any fact which would show that an amendment to the pleadings of appellant would render appellee's position insupportable under the substantive law. Since neither of the cited cases supports appellant's contention, appellant's second point of error is overruled.

The judgment of the Trial Court is in all things affirmed.

ARCHER, Chief Justice (concurring).

I concur in the judgment in this case but I disavow any purpose to create or the creation of a "judicial monster" or even a "catch penny contrivance" in the decision

by the majority of this Court in this case, but that the judgment of the Trial Court was believed to be a correct one.

This explanation is written because of statements made in a dissenting opinion. The Legislature enacted the Summary Judgment Statute and it is its responsibility to repeal it if it is so obnoxious as to become a device to trap the unwary.

If one's logic and reasons are valid, there is no need to decide the question by sharp words or insinuations with respect to the trial of a case, or a review of such case on appeal.

HUGHES, Justice (dissenting).

The majority opinion herein completely stuns my sense of justice. It does these things:

(1) It obliterates the first rule of rules of civil procedure[1] which provides that, "The proper objective of rules of civil procedure [are] to obtain a just, fair, equitable and impartial adjudication of the rights of litigants under established principles of substantive law."

(2) It violates Rule 90 which says that "general demurrers shall not be used."

(3) It denies the right of amendment guaranteed by Rule 63.

(4) It denies application of Rule 65 which provides that an amended pleading takes the place of the pleading it amends.

(5) It denies the right to plead alternatively, guaranteed by Rule 48.

(6) It holds that the filing of a motion for summary judgment under Rule 166–A cuts off the right of the adverse party to amend his pleadings.

(7) It holds that even though the right to summary judgment turns solely on the pleadings, the right of amendment does not exist.

(8) It holds that an admission in an abandoned pleading, even though unsworn and based wholly on hearsay[2] is conclusive of the facts pleaded as against the pleader.

(9) It holds that inconclusive evidence of fact witnesses becomes conclusive by the admission of a pleader in an abandoned pleading which was unsworn and based wholly on hearsay.

(10) It holds that an admission in an abandoned unsworn pleading based on hearsay becomes conclusive on the pleader even though not offered or admitted in evidence.

(11) It flies in the face of authority.

I had thought the general demurrer was abolished. The majority not only resurrects it, but restores it in a more virulent form than it ever had when it was a respectable pleading. Even under the general demurrer practice, a suit could not be dismissed upon the demurrer being sustained without the affected party being afforded an opportunity of amendment. Pleading, Sec. 51, 33 Tex.Jur.; Jud v. City of San Antonio, 143 Tex. 303, 184 S.W.2d 821.

The summary judgment, as to the state of the pleadings was in the nature of an exception. McDonald, Texas Civil Practice, Secs. 17.26, 17.26.3.

When it became apparent to the Court that his ruling would be based on the state of the pleadings, an opportunity to amend should have been afforded. I quote from McDonald, Texas Civil Practice, 1960 Cumulative Supplement, Sec. 17.26.3, p. 41:

"But if the hearing upon the motion for summary judgment uncovers a defect in the opponent's pleading which can be amended, it is error to grant the summary judgment on the pleading

---

1. All Rule references are to Texas Rules of Civil Procedure.

2. By "hearsay", I mean facts not within the knowledge of the party and as to which she could not testify. See Sec. (e), Rule 166–A.

without affording the opportunity to amend.

"On defendant's motion for summary judgment based solely on the pleadings, the court should have before it the pleading on which the plaintiff, after amending to meet any special exceptions, is prepared to stand. The court should rule upon any special exceptions stated in defendant's answer before acting upon the motion, and should afford the plaintiff the opportunity to amend."

Cited in support of this statement are Andrews v. Austin Motor Truck Co., 259 S.W.2d 772, by this Court, and Akin Products Co. v. Bush, 319 S.W.2d 404, Fort Worth Civil Appeals, writ ref., N.R.E. To these authorities there should be added Hammett v. Fleming, 324 S.W.2d 70, Austin Civil Appeals, writ ref., N.R.E.; Wilson v. Mitchell, 299 S.W.2d 406, Dallas Civil Appeals, and Womack v. Allstate Insurance Co., 156 Tex. 467, 296 S.W.2d 233. I quote from the opinion of Justice Walker in the Supreme Court case:

"Under the provisions of Rule 166–A, Texas Rules of Civil Procedure, summary judgment may be rendered only if the pleadings, depositions, admissions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court will normally look to the pleadings to determine the issues that may exist in the case, but when the depositions, admissions or affidavits disclose facts which show that an amendment to the pleadings of the opposite party will render the position of the moving party insupportable under the substantive law, it cannot be said that the latter has established his right to judgment as a matter of law. As stated in Rossiter v. Vogel, 2 Cir.,

134 F.2d 908, 912, '* * * where facts appear in affidavits upon motion for a summary judgment which would justify an amendment of the pleadings, such amendment should not be prevented by the entry of final judgment. * * *' We hold, therefore, that when the affidavits or other summary judgment 'evidence' disclose facts which render the position of the moving party untenable, summary judgment should be denied regardless of defects which may exist in the pleadings of the opposite party."

The majority relies upon Lesikar v. Lesikar, 251 S.W. 555, Galveston Civil Appeals, writ ref., N.R.E. That is not a parallel case. That was a summary judgment case in which, on the hearing, an admission made by a party in an abandoned pleading was introduced in evidence, and the record did not make this admission issuable. The abandoned pleading here was not introduced in evidence and appellant was not called upon to explain or refute it. In fact, she was *powerless* to do either. The admission of appellant, based on facts of which she had no personal knowledge, was made issuable, as the majority apparently concedes, by the depositions on file.[3] Appellant could not add to nor detract from them. See Rule 166–A(f). There was no comparable situation in Lesikar.

In Whitaker v. Coleman, 5 Cir., 115 F.2d 305, Judge Hutcheson had this to say about summary judgments:

"Summary judgment procedure is not a catch penny contrivance to take unwary litigants into its toils and deprive them of a trial, it is a liberal measure, liberally designed for arriving at the truth. Its purpose is not to cut litigants off from their right of trial by jury if they really have evidence which they will offer on a trial, it is to carefully test this out, in ad-

---

**3.** The Court does not hold that proximate cause as related to the negligence of Lou Anne Keller was shown as a matter of law by the evidence. Only by reliance upon the admission in the abandoned pleading is this result reached.

vance of trial by inquiring and determining whether such evidence exists."

The majority here creates more than a "catch penny contrivance." It creates a judicial monster from whose clutches there is no escape.

I respectfully dissent. I would reverse and remand this cause.